Filed 1/7/26  P. v. Sardi CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100987 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE001648) |
| v. | |
| ALDO SARDI, | |
| Defendant and Appellant. | |

A jury found defendant Aldo Sardi guilty of inflicting corporal injury on his ex-wife Christina.  Before us on appeal he contends he was deprived of his constitutional right to a fair trial when the trial court erred in denying his request for mental health diversion, excluding evidence that would impeach Christina, and denying his request for a mistrial based on judicial misconduct.  He further contends the court erred in imposing an upper term sentence.  We disagree and thus affirm.

1

LEGAL AND FACTUAL BACKGROUND

A. The Prosecution's Case

Sardi and Christina met when she was 17 years old and they began dating shortly afterwards. The two married in 2017 and the marriage lasted four years. The couple had two daughters who, at the time of trial, were 12 and nine years old. At the time of the incident leading to the charges in this case, Sardi had custody of the children and lived in Sacramento while Christina lived near Santa Cruz.

Christina testified that she suffered several instances of violence by Sardi. In one incident, she testified that when she tried to get him to move over in bed, he punched her in her nose. While she called the police, she saw Sardi hit himself in the face until his nose bled. She did not remember ever hitting, slapping, or punching Sardi.

The charges in the instant case stemmed from several days at the end of January 2023. Toward the end of that month, Christina brought their daughters to Santa Cruz with her. When Sardi came down to pick up the girls, he stayed a day or two. He and Christina argued, and, at one point, he hit her in the back of her head with a gun.

Later the next day, Christina awoke during the night to find Sardi and the girls gone, and her phone and keys were missing. The following morning, Christina's friend Amy came over. On January 30, Christina and Amy went to Sacramento. They got a hotel room, picked up the girls, and settled in.

On January 31, Sardi asked Christina to leave the hotel room to go with him to pick up food. When she joined him, he took her to an isolated area. Sardi used intravenous drugs in front of her and they fought. During this fight, Sardi slammed her head against the dashboard at least twice. When they returned to the hotel, the girls were asleep in a room with Amy. Christina and Sardi went to a different room, attached to the one occupied by Amy and the girls, and continued to fight. The "screaming, yelling and a lot of loud noises" emanating from the couple's room woke up Amy and the girls. Amy heard Sardi screaming at Christina, calling her "whore" and "slut," and she heard

2

Christina yelling and crying. Christina recalled Sardi pushing and "rag-dolling" her around. Sardi made her transfer all of the money from her bank account to his. When she tried to gather her belongings to leave, she saw the police arrive.

The police arrived in the morning of February 1. One responding officer noticed that Christina "had a lot of bruising all over her body," including significant bruising on her arms and her face was swollen. The left side of her face got progressively worse in front of the officers as time passed. Christina looked disheveled and upset and appeared under the influence of alcohol. According to the officer, it was difficult to speak with Christina about the incident because she was under the influence.

Officers also spoke with Sardi who was calm and cooperative and did not have any obvious injuries other than a mark on the back of his head. The officers arrested Sardi and, in the process, found a hypodermic needle in Sardi's pocket and a usable amount of methamphetamine inside his wallet. Sardi further admitted he used methamphetamine earlier that morning.

At trial, Christina did not remember the specifics of Sardi's assault; she testified she thought she blacked out during the fight. She admitted that she had been drinking the night of the incident; she was intoxicated and she thought that probably affected her memory.[1] However, new bruises appeared after she had been alone with Sardi and her whole body was sore. She identified pictures of those bruises and one possible bite mark. She went to the emergency room the night of February 1; she had swelling and bruising from her scalp to her toes, including a hematoma to her left temple. Christina's bruising on her mastoid bone behind the ear could be indicative of head trauma such as a cranial fracture or traumatic brain injury.

---

[1] According to Christina, she had a problem with alcohol and went into treatment about a week after this incident.

B. The Defense

Sardi testified in his own defense. He, his family, and other witnesses accused Christina of physically attacking him over several years. Sardi admitted that during one such event, he may have bruised Christina while pushing away her attacks. In his version of the event where he punched Christina in the nose, Sardi remembered Christina slapping, pushing, and punching him awake. Sardi rolled over to tell her to stop and accidentally hit her. Despite his immediate apology, Christina threw his phone to the ground and kicked him in the face when he went down to get it.[2]

Sardi also disputed Christina's events leading to the instant case. He denied hitting Christina with a firearm while in Santa Cruz. Sardi noticed that Christina did have a bruise on her arm, but Sardi surmised she got it from falling over while drunk. Before leaving with the girls to return to Sacramento, Sardi noticed that Christina had left her phone in his car. After observing messages from another man on her phone, Sardi decided not to return it to her.

When they reunited in Sacramento, the two went for a drive. According to Sardi, Christina was intoxicated and slumped over in the car. When Sardi confronted her about their relationship, Christina began slapping him, punching him, and hit him on the top of his head with a car key, causing a slight scratch. He swatted at her with a backhand to get her to stop. To stop Christina and prevent the car from veering into oncoming traffic, Sardi yanked on the steering wheel to swerve, causing Christina to hit the side window. At some point, he slammed on the brakes and because Christina was not wearing a seatbelt, she flew forward and hit her face on the dashboard.

---

[2]     The parties stipulated that medical records showed Sardi had fractures of the right nasal bone, interior process of the maxilla, and a nondisplaced fracture of the left nasal bone.

4

At some point, they went back to the hotel. They fought and Christina started slapping and hitting him, so he grabbed her arm and bit her to get her to stop. Sardi denied throwing Christina against the wall but acknowledged that the two might have been throwing things. Christina had bruises before she came over to the hotel room, but Sardi admitted that she might have received additional bruises from when he bit and swatted her and when she hit the side of her face in the car.

During Sardi's testimony, he admitted that in 2007 he suffered a conviction for discharging a firearm into an occupied vehicle and a conviction for an assault with force likely to produce great bodily injury. He also admitted that, 10 years later, he suffered a conviction for first degree burglary and a conviction for assault with force likely to produce great bodily injury.

Right before the jury was instructed on deliberations, Sardi unsuccessfully moved for a mistrial. That same day, the jury found Sardi guilty of inflicting corporal injury resulting in a traumatic condition (Pen. Code, § 273.5, subd. (a); count one)[3] and of unlawful possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count two).

Sardi waived his right to a jury trial on the aggravating factors and the prior convictions and, in a bifurcated hearing, admitted he suffered two prior strike convictions; one for shooting at an occupied vehicle (§ 246) and the other for first degree residential burglary (§ 459). He further stipulated that his prior convictions were numerous or of increasing seriousness, and that he had previously served a term in prison or in county jail. The trial court sentenced Sardi to eight years in state prison, consisting of the upper term of four years, doubled, for count one and six months in the county jail, concurrent, for count two.

---

[3] Undesignated statutory references are to the Penal Code.

5

Sardi filed a timely notice of appeal.

## DISCUSSION

### I

### *Mental Health Diversion*

Sardi filed a request for a grant of pretrial mental health diversion pursuant to section 1001.36 on December 18, 2023. The court denied the request after a hearing held on January 18, 2024. Sardi contends the trial court misapplied the facts and the law to erroneously deny him pretrial mental health diversion. We disagree.

A. Section 1001.36

Sections 1001.35 and 1001.36 promote and authorize trial courts to grant "pretrial diversion" to defendants diagnosed with qualifying mental disorders. "The stated purpose of this legislation is to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services. [Citation.] The Legislature intended the mental health diversion program to apply as broadly as possible." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*).)

Effective January 1, 2023, section 1001.36 was amended by Senate Bill No. 1223 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 735, § 1).[4] "As amended, section 1001.36, subdivision (a) permits a trial court, after considering the parties' positions, to 'grant pretrial diversion to a defendant pursuant to this section if the defendant satisfies the eligibility requirements for pretrial diversion set forth in subdivision (b) and the court determines that the defendant is suitable for that diversion under the factors set forth in subdivision (c).' " (*Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 678.)

---

[4] The statute was also amended in 2024 and 2025; those amendments are not relevant here.

6

Section 1001.36, subdivision (b) sets forth two requirements that must be satisfied for a defendant to be eligible for mental health diversion. First, the defendant must have been "diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders." (§ 1001.36, subd. (b)(1).) Second, the defendant's mental disorder must have been "a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).)

If the defendant satisfies the statutory eligibility requirements, the court must next consider whether the defendant is suitable for pretrial diversion under the four criteria set forth in section 1001.36, subdivision (c), all of which must be met. As relevant here, subdivision (c)(4) requires that the "defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).)

An unreasonable risk of danger to public safety as defined in section 1170.18, subdivision (c), means "an unreasonable risk that the [defendant] will commit a new violent felony" within the meaning of section 667, subdivision (e)(2)(C)(iv), which felonies are "colloquially referred to as 'super strikes.' " (*Whitmill, supra*, 86 Cal.App.5th at p. 1149.) "Those super strikes are murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, any serious or violent felony punishable by death or life imprisonment, or any sexually violent offenses or sexual offense committed against minors under the age of 14." (*Id*. at pp. 1150-1151.) In making the unreasonable risk of danger to public safety determination, the court "may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

7

"Even when the defendant makes a prima facie showing of meeting the statutory eligibility and suitability criteria, the court may nonetheless exercise its discretion to deny diversion. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892.) 'But, this "residual" discretion must be exercised " 'consistent with the principles and purpose of the governing law.' " [Citations.] That purpose includes a strong legislative preference for treatment of mental health disorders because of the benefits of such treatment to both the offending individual and the community. Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals.' (*Id.* at pp. 892-893.)" (*Gomez v. Superior Court, supra*, 113 Cal.App.5th at p. 679.)

B. Additional Background

At the hearing to determine Sardi's request for mental health diversion, the parties agreed that Sardi met "all the relevant considerations for eligibility and suitability" except for the factor regarding dangerousness.

Contending that he did not pose an unreasonable risk to public safety, Sardi noted that the instant case did not involve weapons and any prior incident involving a weapon occurred nearly one to two decades ago. Sardi further noted his willingness to abide by the relevant conditions, his tremendous incentives to be compliant, and the intensity of the oversight provided by the service providers and the court that would further ensure compliance. Sardi urged the court to follow the analysis in *Whitmill, supra*, 86 Cal.App.5th 1138, in which the defendant was not found to pose an unreasonable risk of dangerousness despite the fact that he threatened to kill the victim and fired a gun into the air, and to find that Sardi does not belong to the narrow band of defendants who were likely to commit a super strike.

In opposition, the People provided a summary of Sardi's criminal history including a confidential summary of the incident in 2007 leading to his conviction for

8

shooting at an occupied vehicle (§ 246), as well as for his 2017 first degree burglary conviction (§ 459)—the two prior strike convictions alleged and found true in this case. Each prior conviction included Sardi threatening people followed by Sardi discharging a firearm in the threatened person's vicinity. At trial, Sardi testified to the events as follows.[5] In 2007, there was an incident on a roadway and a car followed Sardi home. Two men got out of the car and Sardi pulled his gun, told the men to leave, and, as the men ran away, Sardi fired a shot in their direction; they were in or near the car at the time he fired the shot. In the 2017 case, Sardi broke into his friend's house and stole some tools. At a later date, Sardi brought his gun when he went to speak with someone about the burglary and ended up firing his gun.

The People also relied heavily on the allegations in the instant case from Christina and other witnesses that Sardi beat Christina over several days as well as on an exhibit that contained several photographs of Christina with large and dark colored bruises on her arms, both eyes, her chest, the inside of one ear, and behind both ears.[6] The People maintained that due to Sardi's current charges and criminal history, there was a very real threat that Sardi would commit a super strike.

---

[5] Sardi's motion for, and the prosecution's opposition to, mental health diversion were transmitted to this court as confidential records. Sardi does not divulge these facts in his briefs, and we interpret this to mean he chooses to keep the material confidential. (See Cal. Rules of Court, rule 8.47(c)(1) [publicly filed documents may not "disclose material contained in a confidential record, including a record that, by law, a party may choose be kept confidential in reviewing court proceedings and that the party has chosen to keep confidential"].) At trial, Sardi testified to some of the confidential material, and we recount the testimony that is consistent with, albeit a sanitized version of, the information considered by the court in determining whether to grant mental health diversion.

[6] This is consistent with the evidence presented at trial, including the photographs of Christina's injuries.

The court made the following findings. "The issue before the Court is whether Mr. Sardi presents an unreasonable risk of committing a super strike even if treated in the community. That has been thoroughly briefed and argued this afternoon to the Court. I disagree with the defense's position that his prior criminal history is somehow disconnected in effect from what he did or [is] alleged to have done in the current case. It's a crime of violence in this case. [¶] Thankfully there was no weaponry, that is true, but looking at the continuity and sequence of events in Mr. Sardi's life, there are the facts that are undeniable from 2008 involving a gun, which is laid out in deeds [*sic*]. I'm not going to recite that. For the record, I'll reference it by way of the People's brief, a 2015 incident in which there was a semi-automatic handgun and multiple threats to kill individuals and shoot all. [¶] Here we have a situation where Mr. Sardi beat the victim significantly. There are significant injuries. And while I am cognizant of what the treatment plan is, I find that even if treated based on the treatment plan provided, that based on the totality of the record before me, that Mr. Sardi does present an unreasonable risk of committing a super strike. And for that reason, the request for mental health diversion is denied. [¶] And I would also note that based on the record before me, there is substantial evidence as set forth by the People in detail to support that finding. The request for mental health diversion is denied."[7]

C. Analysis

A trial court's ruling on a request for mental health diversion is reviewed for abuse of discretion, and the court's factual findings are reviewed for substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449 (*Moine*).) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal

---

[7]     Because the trial court indicated that "all the relevant considerations for eligibility and suitability are met save and except dangerousness," and Sardi does not raise it here, we do not address the eligibility requirements of section 1001.36, subdivision (b).

standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Id*. at p. 449.)

At the outset, we disagree with Sardi's implication that the court was acting within its residual discretion under section 1001.36, subdivision (e) in denying his request for mental health diversion. This residual discretion allows the court to deny mental health diversion even if the statutory eligibility and suitability preconditions are met. (*Sarmiento v. Superior Court, supra*, 98 Cal.App.5th 882, 892-893; *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888.) Here, the court determined Sardi failed to satisfy the fourth requirement for suitability for diversion under subdivision (c) and expressly found Sardi posed an unreasonable risk of danger to public safety if treated in the community. Thus, Sardi did not meet all six preconditions for mental health diversion and the trial court's residual discretion was never triggered. (But see *Sarmiento*, at p. 895 [the defendant made a prima facie showing of all six threshold requirements but court used its residual discretion to deny diversion]; *Qualkinbush*, at p. 888 [same].)

Nevertheless, Sardi contends that the court erred in its conclusion because the court's analysis does not explain how two incidents in Sardi's distant past involving a firearm form a continuous pattern of violence that creates an unreasonable risk he will commit a super strike—especially where there was no evidence that he aimed the handgun at anyone. In analyzing Sardi's contention, the relevant question is whether there is substantial evidence to support the court's finding. (See *Moine, supra*, 62 Cal.App.5th at p. 450 ["a trial court necessarily must find the defendant is 'likely to commit a super-strike offense' " to deny diversion on this ground; in other words, "the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies"].) We conclude the answer is *yes*.

Sardi's criminal history includes two prior strike offenses for serious felonies. Each of those cases involved threats to kill and to shoot people with a contemporaneous

11

discharge of a firearm. Each of these threats and discharge of a firearm occurred in areas of the community where innocent bystanders could have been harmed. And in each of these events, contrary to Sardi's claim, Sardi aimed the handgun at a person when he threatened to shoot or kill that person. The continuous pattern demonstrated is that despite Sardi's status as a felon, he continued to possess firearms and use them to threaten harm.

In addition, the record revealed that although Sardi lived in a different part of the state than Christina, this physical separation had no mitigating impact on the domestic violence within their relationship. The allegations in the People's opposition to mental health diversion (and later adduced at trial) were that over several days, Sardi inflicted bodily injury on Christina in Santa Cruz, then purposefully limited Christina's freedom by taking her cell phone and keys while he left with their daughters to drive to Sacramento. Christina obtained a ride to Sacramento where she, Sardi, and the girls stayed in a hotel. This subsequent encounter with Sardi again left Christina injured. Photographs of Christina's injuries provide substantial evidence for the court's finding that the current offense involved "significant injuries." Sardi's past violent behavior, coupled with the facts of the current offense, provides substantial evidence supporting the court's conclusion that Sardi was not suitable for diversion.

We find *Whitmill* and *Moine*, relied upon by Sardi, distinguishable. In *Moine*, the defendant had no prior violent record but got into a fistfight with another patient at an urgent care facility and a year later made a verbal threat to shoot an urgent care worker. (*Moine, supra*, 62 Cal.App.5th at pp. 444-445.) After the defendant threatened the worker, he immediately and profusely apologized. (*Id*. at p. 445.) Two psychiatrists concluded he posed a low risk for future assault. (*Id*. at p. 446.) In fact, the defendant had been released upon bond for over two years prior to trial, in part based on the trial court's finding he was not likely to cause great bodily harm to others if released. (*Id*. at p. 451.) The appellate court concluded these facts did "not support the trial court's

12

implied finding that [the defendant] was likely to commit a super strike offense if he received mental health treatment in the community." (*Ibid.*)

In *Whitmill*, the 61-year-old defendant, who also had no prior violent record, negligently fired a single shot into the air. (*Whitmill, supra*, 86 Cal.App.5th at pp. 1142, 1151.) The defendant then threw away his weapon and ran away from any further confrontation. (*Id.* at pp. 1143, 1151.) He peacefully came forward at law enforcement's request in order to be arrested. (*Id.* at p. 1151.) His psychologist concluded the defendant would not pose an unreasonable risk of danger to public safety if he were treated in the community. (*Id.* at p. 1145.) The *Whitmill* court concluded the defendant's "compliant nonviolent behavior after negligently firing one shot into the air mitigates any inference that [the defendant] is likely to commit a super-strike offense in the future." (*Id.* at p. 1154.)

Unlike in *Whitmill* and *Moine*, Sardi has a prior record that includes violence. Neither Sardi's use of his weapon to threaten others nor his assault on Christina demonstrates a single episode of negligent violence coupled by an immediate retreat and cooperation with law enforcement as reflected in *Whitmill, supra*, 86 Cal.App.5th at pages 1142 to 1143 and 1151. Nor is there any indication that Sardi apologized after making any of his threats as reflected in *Moine, supra*, 62 Cal.App.5th at pages 444 to 445. And, unlike in both *Whitmill* and *Moine*, Sardi does not offer an expert opinion that he would not pose an unreasonable risk if treated in the community. (See *id.* at p. 446; *Whitmill*, at p. 1145.)

Finally, as the People note, even if we were to agree with Sardi's claim that his violence is limited to Christina within their tumultuous relationship, Sardi fails to explain why that would be insufficient to justify denying mental health diversion given the severity of the beating he inflicted upon her. Indeed, the record refutes Sardi's claim that separating him from Christina would show that he poses no threat to anyone in the community. Christina is a member of the community at large. The two remain

13

connected in some capacity through their children and past experience shows that their physical separation has not forestalled Sardi's violence. Indeed, they were living in different parts of the state when the instant offense occurred. Finally, given the nature of the injuries Christina sustained in this case, including multiple head injuries, there exists an unreasonable risk that, if treated in the community, he would murder or attempt to murder Christina. We conclude that, contrary to Sardi's claim, the court did not abuse its discretion in finding Sardi not suitable for mental health diversion.

II

*Impeachment of Complaining Witness*

At trial, the court precluded the defense from introducing evidence of Christina's driving while under the influence (DUI) conviction and evidence of a separate "road rage incident." On appeal, Sardi contends that the road rage incident constituted conduct involving moral turpitude and the trial court erred in failing to admit it as impeachment evidence. According to Sardi, his inability to impeach Christina with the road rage incident denied him a fair trial, which was exacerbated by his inability to effectively cross-examine Christina about her DUI. We disagree.

A. Additional Background

Prior to trial, the trial court granted the prosecution's request to exclude evidence of Christina's prior DUI,[8] finding it was not a crime of moral turpitude and any probative value was outweighed by its prejudice under Evidence Code section 352.

The parties later addressed whether, pursuant to Evidence Code section 1103, the defense could introduce evidence that Christina was violent. The court granted the defense's request, with the caveat that if the defense introduced such evidence, it would open the door to allow evidence that Sardi had prior convictions involving violence.

---

[8]     The People represent Christina's DUI is a misdemeanor conviction. Sardi does not dispute this representation.

14

On the fourth day of trial, and after Christina had concluded her testimony, the defense sought to introduce a road rage incident between Christina and Sardi's mother (the mother). Apparently, the mother stated she was dropping the children off at school and Christina pulled right in front of her, causing the mother to swerve and almost collide with a parked car. The mother said Christina kept braking in front of her and then at one point pulled next to her and "made a little finger motion." The prosecutor requested the evidence be excluded, arguing that it was irrelevant to the issues at trial, did not demonstrate Christina's character for violence, and noted that because Christina had already concluded her testimony, she did not have an opportunity to address the allegations. Defense counsel responded that the whole case hinged on Christina's credibility and rebutted her testimony that she was never an aggressor. And, according to defense counsel, the incident included a threat and an assault with a vehicle.

The court noted that a character for making threats was not the same thing as a character for violence. The court granted the prosecutor's request to exclude the evidence because: the defense presented no evidence of a good faith basis as to why this evidence was disclosed so late in the proceedings, the incident was not a violent act that fell under Evidence Code section 1103, subdivision (b), and any probative value was substantially outweighed by undue prejudice. The court stated that under these circumstances it was not going to put the burden on the People to have to recall Christina to address these allegations.

B. Analysis

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931; see also *People v. Ayala* (2000) 23 Cal.4th 225, 273.) "[T]he admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude. Beyond this, the latitude [Evidence Code] section 352 allows for

15

exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296, fn. omitted; see also *People v. Lepolo* (1997) 55 Cal.App.4th 85, 90.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*Clark*, at p. 932.)

Evidence of prior misconduct of the victim may also be admissible under Evidence Code section 1103. Although character evidence is generally inadmissible, "[i]n a criminal action, evidence of the character . . . of the victim of the crime for which the defendant is being prosecuted is not made inadmissible . . . if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character." (Evid. Code, § 1103, subd. (a)(1).) For example, a defendant charged with a violent crime may introduce evidence of the victim's violent character to support a self-defense claim. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 698-699.) If the defendant offers evidence showing the victim has a violent character, then the prosecution may offer evidence of the defendant's violent character to show the defendant acted in conformity with it. (Evid. Code, § 1103, subd. (b); *People v. Myers* (2007) 148 Cal.App.4th 546, 552-553.)

Because the issue was litigated at trial as a question of admissibility under Evidence Code section 1103, Sardi's claim on appeal that the court should have admitted the evidence for impeachment purposes is forfeited.[9] (See *People v. Holmes, McClain*

---

[9] Similarly, any claim that the court erred in excluding Christina's DUI on the basis that it is not a crime of moral turpitude or improper character evidence is forfeited by failing to raise this contention on appeal; Sardi does not present argument or analysis on this aspect of the ruling. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [A party forfeits a claim on appeal if the party fails to support

16

*and Newborn* (2022) 12 Cal.5th 719, 773 [where the defendants objected to evidence on hearsay grounds, appellate challenges based on Evid. Code, §§ 1101 & 352 are both forfeited]; *People v. Roberts* (2010) 184 Cal.App.4th 1149, 1193.)

However, anticipating a claim of ineffective assistance of counsel, we will exercise our discretion to review the merits of Sardi's claim. In doing so we conclude there was no abuse of discretion in excluding the road rage incident as impeachment evidence under Evidence Code section 352. "Additional considerations apply when the proffered impeachment evidence is misconduct other than a prior conviction. This is because such misconduct generally is less probative of immoral character or dishonesty and may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude." (*People v. Clark, supra*, 52 Cal.4th at pp. 931-932; *People v. Wheeler, supra*, 4 Cal.4th at p. 296 [any conduct not amounting to a felony is a "less forceful indicator of immoral character or dishonesty than is a felony" and "entails problems of proof, [and] unfair surprise"].) "[C]ourts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*Wheeler*, at pp. 296-297; see also *Clark*, at p. 932.)

Here, the evidence was disclosed late, resulting in unfair surprise to the prosecution. Sardi does not dispute this, nor does he complain about the trial court's consideration of the timeliness of the disclosure in excluding the evidence. However, we agree with the trial court that even if the evidence as offered by defense counsel—that Christina pulled her car in front of the mother's car or swerved her car towards the mother causing the mother to swerve off of the road—constituted an act of violence, the evidence was minimally probative and outweighed by the necessary consumption of time and potential for issue confusion. Compared to the issues at trial, the introduction of this

the claim "with cogent argument, legal authority or specific citations to the record on appeal"].) Thus, we need not address the propriety of the exclusion of the DUI conviction.

17

evidence for any use would have taken a fair amount of time and effort in exchange for minimally probative evidence. Specifically, defense counsel hoped to use this evidence to provide an example of Christina acting as the aggressor. But to be able to introduce this incident as impeachment evidence, the prosecution would have had to recall Christina and perhaps the mother and consume trial time on whether and how the road rage incident happened. Even if the testimony would have been consistent with the proffer, at best the jury would have learned of an incident of Christina's aggressive behavior toward the mother, the nature of which was less relevant than the evidence the jury already had before it regarding Christina's aggression toward Sardi. We describe that evidence, *ante*. Thus, excluding evidence of the road range incident was within the trial court's discretion pursuant to Evidence Code section 352. (See *People v. Gutierrez* (2009) 45 Cal.4th 789, 828 [the trial court had discretion to exclude evidence, even if admissible under Evid. Code, § 1103, "if admitting the evidence would have confused the issues at trial, unduly consumed time, or been more prejudicial than probative"].)

Finally, even were we to find error, Sardi has failed to convince of its prejudicial effect. Sardi contends that the court "blocked the defense at nearly every turn from presenting evidence of [Christina]'s prior conduct." Not so. The court allowed witnesses to testify to several instances where Christina was an aggressor—which both contradicted Christina's claim that she never initiated physical violence and introduced evidence of her character for violence. And, although the trial court prohibited discussion of Christina's DUI as the reason she lost custody of the children, evidence of Christina's drinking was abundant at trial. Christina herself admitted she had an alcohol problem and that she was intoxicated on the night of the incident—which impacted her memory. Law enforcement also observed that Christina was difficult to communicate with that morning because she was under the influence of alcohol. Other witnesses testified to violent encounters between Christina and Sardi when Christina was drunk. Sardi's argument before us is that had the requested evidence of Christina's conduct been

18

admitted, it was far more likely that Sardi's version of the events would have been seen in a more favored light, and the jury would have harbored reasonable doubt as to his guilt. This conclusory statement without analysis does not persuade us. Neither was the jury persuaded despite receiving evidence of Christina's conduct as an aggressor and of her excessive drinking.

In light of this we determine there is no reasonable probability the result would have been different had the trial court admitted evidence of the road rage incident and find any error in excluding it was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Trujeque* (2015) 61 Cal.4th 227, 280 [reviewing Evid. Code, § 352 argument "under the reasonable probability standard for prejudice" of *Watson*]; *People v. McCurdy* (2014) 59 Cal.4th 1063, 1103 [applying *Watson* standard to claimed abuse of discretion under Evid. Code, § 352]; *People v. Marks* (2003) 31 Cal.4th 197, 227 ["the application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard of *Watson*"].) "As a general rule, 'evidence which merely impeaches a witness is not significant enough to make a different result probable.' " (*People v. Green* (1982) 130 Cal.App.3d 1, 11.)

III

*Denial of Mistrial*

Sardi contends the court abused its discretion in denying his motion for a mistrial due to the court's tone, demeanor, and conduct towards trial counsel, all of which Sardi contends demonstrated bias and deprived him of a fair trial. We conclude that Sardi forfeited his claim on appeal by failing to demonstrate he suffered prejudice from the denial of the motion. (*People v. Abel* (2012) 53 Cal.4th 891, 914.)

A. Additional Background

During an Evidence Code section 402 hearing, the parties discussed the extent of a defense witness's testimony concerning prior acts of Christina's violence. The trial court

19

prohibited the witness from testifying to a hearsay statement from Sardi that accused Christina of pushing one of their children. However, during direct examination, the witness testified about the prohibited hearsay more than once. At the second mention of the hearsay evidence, the trial court interrupted the witness and in the presence of the jury said, "Then, stop. Hearsay is not coming in. So . . . [¶] . . . [¶] . . . please stop trying to get that in. [¶] If this witness goes there again, I'm gonna excuse her and strike her testimony. [¶] I expect you [trial counsel] to prep—prep your witnesses and not have the witness keep trying to sneak in things that I already told you are not admissible. [¶] So let's move on and be forewarned. Thank you." Defense counsel did not object or seek an admonishment at that time and the trial resumed. After the defense called an additional witness, the evidence portion of trial concluded, and the parties discussed jury instructions outside the presence of the jury.

The next day, outside the presence of the jury, the parties discussed the defense's request to instruct the jury with the first paragraph of CALCRIM No. 3530, which states, in part, "Do not take anything I said or did during the trial as an indication of what I think about the evidence, the witnesses, or what your verdict should be." Defense counsel ultimately agreed that this statement was covered by a portion of CALCRIM No. 3550 (which was given) and that CALCRIM No. 3530 was unnecessary.

Defense counsel then moved for a mistrial, alleging that the court's conduct during the defense witness's hearsay testimony was aggressive and "insinuate[ed], essentially, that Defense is lacking in credibility, undermin[ed] Defense arguments, as well as just an affront and attack towards Defense Counsel as well." Counsel went on, explaining that the trial court's actions in pointing its finger at defense and using an aggressive and elevated tone swayed the jury as a bias against Sardi.

The court denied that it yelled or pointed its finger and explained that when it interrupted the witness's testimony, it was acting to control the courtroom in a manner consistent with its prior rulings.

20

Defense counsel responded, "[T]he tone feels similar again, in this moment." The parties then discussed the court's tone as well as other comments made during discussions on the evidence outside the presence of the jury. Defense counsel argued that, while the jury did not hear the court's additional statements, those comments demonstrated the court's bias and prejudgment of the case.

The trial court denied the motion for a mistrial, finding that "the incidents that have been raised as a grounds for mistrial either individually or collectively do not come close to rising to the level of irreparably damaging the Defendant's right to receive a fair trial."

B. Analysis

A defendant has a due process right to a fair and impartial trial judge under the California and United States Constitutions. (*People v. Peoples* (2016) 62 Cal.4th 718, 787.) The trial judge also has a duty under section 1044 "to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters . . . ." Given that duty, " '[i]t is well within [a trial court's] discretion to rebuke an attorney, sometimes harshly, when that attorney asks inappropriate questions, ignores the court's instructions, or otherwise engages in improper or delaying behavior.' " (*People v. Snow* (2003) 30 Cal.4th 43, 78.) Nevertheless, " 'the court "commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression it is allying itself with the prosecution." ' " (*People v. McWhorter* (2009) 47 Cal.4th 318, 373.) "We review the trial court's refusal to grant a mistrial for abuse of discretion." (*People v. Johnson* (2018) 6 Cal.5th 541, 581.)

As noted above, defense counsel identified one statement made by the trial court in the presence of the jury. Even were we to conclude that the trial court's comment constituted error, Sardi has forfeited the issue on appeal by failing to discuss prejudice. We reach the same conclusion with respect to his claims that the court was biased and

21

prejudged the case as purportedly demonstrated by the court's additional comments outside the presence of the jury. Sardi states, "it is a matter of speculation how prejudicial a particular verbal exchange, comment or ruling might be" and asks us "to review the court's potential misconduct and determine whether [his] Sixth and Fourteenth Amendment right counsel and a fair trial before an unbiased jury has been so prejudiced as to require the present conviction to be set aside." But it is Sardi who must establish prejudice as he is the one seeking relief on the theory that the court's discourteous and disparaging remarks to defense counsel and witnesses " ' "transcended so far beyond the pale of judicial fairness as to render a new trial necessary." ' " (*People v. Abel, supra*, 53 Cal.4th at p. 914, quoting *People v. Sturm* (2006) 37 Cal.4th 1218, 1233.) His failure to attempt to do so forfeits this argument on appeal. (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 [when a party fails to present legally supported analysis for his argument on an issue, the party forfeits that issue on appeal].)[10]

IV

*Upper Term Sentence*

Sardi contends that his traumatic youth was a factor in mitigation requiring imposition of a presumptive low term pursuant to section 1170, subdivision (b)(6). He further contends the court abused its discretion in imposing the upper term because the aggravating factors did not outweigh those in mitigation. We disagree.

A. Additional Background

Sardi agreed to waive his right to a jury trial regarding the sentencing allegations. Instead, he admitted the following: (1) he was "convicted of the crime of shooting at an

---

[10]     We note that a trial judge's task of balancing the moving parts of a jury trial is not easy. Amidst the effort to manage and control witnesses, litigants, attorneys, and jurors, trial judges are expected to be patient, dignified, and courteous to all whom the judge deals with, even in the face of criticism. Occasionally this bears reminding.

occupied vehicle, in violation of Section 246, a serious felony and a strike"; (2) he was "convicted of the crime of first degree residential burglary, in violation of Section 459 of the Penal Code, also a serious felony and a strike"; (3) his "prior convictions as an adult or as a juvenile are numerous or of increasing seriousness, within the meaning of Penal Code Section 1170 [and] of the California Rule of Court 4.421 (b) (2)";[11] and (4) he "served a prior prison term in prison or County Jail under Penal Code Section 1170(h), within the meaning of Penal Code Section 1170 and Rule of Court 4.421 (b) (3)."

The probation report contained the two admitted factors in aggravation but also included an additional factor that the crime involved great violence or great bodily harm under rule 4.421(a)(1) and found no circumstances in mitigation.

At the sentencing hearing, Sardi asserted that the probation department's determination that there were no mitigating factors was incorrect and that the following factors should be considered in mitigation: he suffered psychological and childhood trauma, and his prior performance on parole was satisfactory. The court stated it would accept the information, as described in Sardi's sentencing memorandum brief, as true and consider those as mitigating factors.

The court then imposed sentence. "With respect to Count 1, the violation of Penal Code Section 273.5, the Court will impose the upper-term of four years, which is doubled to eight years, given the prior strike. [¶] The Court recognizes that under 1170 (b) (6), unless the Court finds the aggravating circumstances outweighed the mitigating circumstances, someone with psychological trauma is entitled to a lower term. [¶] But in this case, given the aggravating factors, given the nature and the injuries, given the Defendant's prior record, the Court finds that the—not even—notwithstanding 1170 (b) (6), that an imposition of the lower term would be contrary to the interest of

---

[11]    Undesignated rule references are to the California Rules of Court.

justice. [¶] In addition, the Court is imposing the upper-term of four years—Of course the Court finds that even accepting the aggravating factors, as set forth by the Defense—I mean, the mitigating factors, as set forth by the Defense, the aggravating factors far outweigh the mitigating factors, such that it is in the interest of justice in this case to impose an upper-term. [¶] So that's for Count 1. That's eight years. [¶] For Count 2, the misdemeanor violation of Section 11377 (a), the Court will impose a sentence of six months, to run concurrent, for a total sentence of eight years in State Prison."

### B. Analysis

We review the court's sentencing decisions for an abuse of discretion. (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8.) "That 'discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest." ' [Citation.] The court abuses 'its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.' " (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 206.)

Section 1170, subdivision (b)(1) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided." Rule 4.420(d) provides: "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial."

Section 1170 also contains a presumption in favor of the lower term if certain mitigating circumstances were a contributing factor in the commission of an offense, including if "[the defendant previously] experienced psychological, physical, or

24

childhood trauma." (§ 1170, subd. (b)(6)(A); see § 1016.7, subd. (b).) Rule 4.421 sets forth circumstances in aggravation that a court may consider in sentencing if a presumptive lower term factor contributed to an offense. Under those circumstances, the trial court may impose the middle term only if it finds that the aggravating circumstances in rule 4.421 outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. (§ 1170, subd. (b)(6).)

Finally, a court also has discretion to impose an upper term sentence if certain aggravating factors are proven beyond a reasonable doubt to a jury or to a judge in a court trial or stipulated to by the defendant. (§ 1170, subd. (b)(2), (3); *People v. Lynch* (2024) 16 Cal.5th 730, 742.)

Sardi contends that because the probation report listed one additional factor in aggravation that was never proven or admitted, the court erred in relying on it to impose an upper term sentence. Sardi further contends the trial court's determination that imposition of the upper term was in the interests of justice was "neither truthful, nor consistent with the spirit" of the law. He "is at a loss to understand how the two aggravating factors *far outweigh* the two mitigating factors" particularly where section 1170 specifically directs the imposition of the lower term when a defendant suffered childhood trauma. He contends this demonstrates the trial court acted arbitrarily.

First, Sardi forfeited these claims by failing to object to the trial court's analysis in imposing the upper term. As a general rule, "all 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for the first time on appeal are not subject to review." (*People v. Smith* (2001) 24 Cal.4th 849, 852; see also *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100-1101 [the defendant waived claim court failed to consider several mitigating factors by failing to object at sentencing hearing].)

Even if not forfeited, we disagree Sardi is entitled to relief. Contrary to his claim, there is no indication in the record that the trial court improperly relied on the additional

factor that the crime involved great violence or great bodily harm to impose the upper term; the trial court made no such finding. Rather, the court recognized that Sardi's psychological trauma "entitled [him] to a lower term" but for the court's finding that "given the aggravating factors, given the nature and the injuries, given the Defendant's prior record," the "imposition of the lower term would be contrary to the interest of justice." Thus, the record does not establish that "the aggravating factors" referenced by the court included the additional factor identified by probation that the crime involved great violence or great bodily injury or anything other than those factors specifically admitted by Sardi. Indeed, the court's overall ruling suggested it did not rely on the additional factor, as that would have rendered the court's additional specific reliance on "the nature [of] the injuries" redundant.

In addition, we interpret this ruling as meant to explain the court's reasons for deviating from the presumptive lower term. In choosing between lower and middle terms, "all that section 1170 requires is that the court apply the Judicial Council's sentencing rules and that the court state the facts and reasons for imposing the middle term on the record at the time of sentencing. (Pen. Code, § 1170, subds. (a)(3), (b)(5), (c); see Cal. Rules of Court, rule 4.401 et seq. [felony sentencing rules].)" (*People v. Sarmiento-Zuniga* (2025) 108 Cal.App.5th 1216, 1223-1224.) "The plain language and statutory context of Penal Code section 1170, subdivision (b) are clear the Legislature did not intend to impose evidentiary or proof requirements or restrictions on the imposition of a middle term sentence. (Compare Pen. Code, § 1170, subd. (b)(1) with Pen. Code, § 1170, subd. (b)(2), (6).)" (*Id*. at p. 1223.) Thus, to deviate from the presumptive lower term in contemplation of a middle term, the court may rely on any fact, even those not admitted or proven to a jury. (See rule 4.420(d).)

Nevertheless, Sardi contends that the court incorrectly found the factors in aggravation far outweighed those in mitigation such that his upper term sentence is not justified. His argument appears to be premised on the claim that because the number of

26

items in the mitigation column match the number of items in the aggravation column, they must be equal. Not so. This mechanical approach to discretionary weighing of mitigating factors against those in aggravation has long since been rejected. (See, e.g., *People v. Parker* (2022) 13 Cal.5th 1, 83 [within the death penalty scheme, the weighing of aggravating and mitigating circumstances does not mean a mere mechanical counting of factors on each side of an imaginary scale, or the arbitrary assignment of weights to any of them; the jury is free to assign whatever moral or sympathetic value deemed appropriate to each and all of the various factors].) To the extent that Sardi contends that his past trauma was a *super* mitigating factor and should automatically outweigh the factors in aggravation, we disagree. While recent legislation has changed the parameters of the trial court's sentencing discretion, trial courts still have "wide discretion in weighing the aggravating and mitigating factors" (*People v. Evans* (1983) 141 Cal.App.3d 1019, 1022), and may balance them in qualitative as well as quantitative terms (see *People v. Lambeth* (1980) 112 Cal.App.3d 495, 501).

Finally, contrary to Sardi's claims, the record demonstrates that the trial court complied with its statutory obligations, thus fulfilling the purpose and intent of section 1170 and foreclosing a determination that the sentence was arbitrary and capricious. Under section 1170, subdivision (b)(5), the sentencing court must "set forth on the record the facts and reasons for choosing the sentence imposed." This requirement is satisfied when the court states, "in simple language[,] the primary factor or factors that support the exercise of discretion." (Rule 4.406(a).) "The statement need not be in the language of the statute." (*Ibid.*) Here, the court did just that when it identified the mitigating circumstances it considered "as set forth by the Defense," against the aggravating factors, the nature of the injuries, and Sardi's criminal record (that included Sardi's admitted two prior strike convictions, that his convictions were numerous or of increasing seriousness, and that he served a prior prison term) and expressly found, "the aggravating factors far outweigh the mitigating factors, such that it is in the interest of justice in this case to

27

impose an upper-term." In short, the trial court had discretion to weigh the factors in the manner it did, and to impose a sentence consistent with that weighing process. The sentencing decision was not arbitrary, capricious, or whimsical.

DISPOSITION

The judgment is affirmed.

/s/_____<br>
EARL, P. J.

We concur:

/s/_____<br>
MAURO, J.

/s/_____<br>
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.